654 A.2d 555

**COMMONWEALTH of Pennsylvania,**

v.

**Jose BOURGEON, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 20, 1994.

Filed Dec. 20, 1994.

Reargument Denied Feb. 28, 1995.

356

David P. Trulli, Philadelphia, for appellant.

Vram Nedurian, Jr., Asst. Dist. Atty., Newton Square, for Com. appellee.

Before CIRILLO, OLSZEWSKI and HESTER, JJ.

CIRILLO, Judge:

This is an appeal from a judgment of sentence entered in the Court of Common Pleas of Delaware County. We affirm.

Appellant Jose Bourgeon was charged with aggravated indecent assault, indecent assault, and corruption of minors as a result of an assault on two minor boys, Justin Z., age seven, and David S., age eleven. Both boys testified at trial. The trial resulted in a hung jury and a mistrial was declared. Bourgeon was retried and convicted of two counts of corruption of minors.

Bourgeon filed post-trial motions, which were denied. The sentencing judge sentenced Bourgeon to a total term of fifteen

to thirty-six months in the Delaware County Prison. Additionally, the court ordered Bourgeon to undergo counseling and to pay restitution for one of the victim's counseling. This appeal followed.

Bourgeon raises the following issues for our review:

1. Did the trial judge err in finding through the weight and sufficiency of the evidence, that the Commonwealth's witness was "unavailable" to testify at the second trial on May 26, 1993, and as such, admit his prior testimony into evidence from the October 28, 1992 trial, denying the appellant his constitutional right to view and cross-examine his accuser?

2. Did the trial judge abuse his discretion by qualifying Dr. George Leute as an expert based upon his testimony concerning the examination of the Commonwealth witness Justin Z. and other hearsay testimony?

3. Did the trial judge err in determining that the verdict was consistent with the weight and sufficiency of the evidence?

■ In his first issue, Bourgeon claims the court erred in finding that Justin Z. was unavailable to testify at the second trial. Justin testified and was cross-examined at the first trial. At the second trial, however, Justin would not testify. Justin was examined by a psychologist, Dr. George M. Leute. Dr. Leute testified that Justin was severely traumatized by the event and by having to testify at the preliminary hearing and the first trial. He stated that Justin was unable to relate the events of the case again. Dr. Leute also testified that if Justin was called again to testify, he would suffer additional trauma. Based on this testimony, the trial court ruled that Justin was unavailable to testify and admitted into the second trial the audio tape of Justin's testimony from the first trial.

Bourgeon argues that, as a result of the court's finding that Justin was unavailable to testify, the court denied him his constitutional right to cross-examine and confront the witnesses against him. The premise of Bourgeon's argument, though valid, is not directly applicable in this case.

In *Commonwealth v. Ludwig*, 366 Pa.Super. 361, 531 A.2d 459 (1987), this court was presented with the issue of whether use of a closed circuit television to transmit a child's testimony violated the defendant's state constitutional right to confront witnesses against him. The majority opinion held that it did not. *Id.* at 371–73, 531 A.2d at 464. The Pennsylvania Supreme Court granted Ludwig's appeal, 518 Pa. 617, 541 A.2d 744 (1988), and reversed. *Commonwealth v. Ludwig*, 527 Pa. 472, 594 A.2d 281 (1991).

> Our state constitution provides in pertinent part: "In all criminal prosecutions the accused hath a right ... to meet the witness face to face...." Pa. Const. art. I, § 9. This clause and similar provisions in other state constitutions as well as the sixth amendment to the United States Constitution are firmly rooted in the history of Anglo–Saxon jurisprudence.... Case law, history, and the plain language of our constitution establish that in Pennsylvania, the right of confrontation means that a person has the right to meet his accuser face to face in the courtroom.... Though the right to confrontation is important, it is not absolute. **Face to face confrontation may be the constitutional ideal, but many adjustments and exceptions to the ideal are constitutionally permissible....**

*Commonwealth v. Ludwig*, 366 Pa.Super. 361, 389–92, 531 A.2d 459, 473–475 (1987) (Cirillo, P.J., dissenting) (emphasis added).

In *Ludwig*, the Pennsylvania Supreme Court acknowledged that "the right to confront an accuser is not without exception." 527 Pa. at 478–79, 594 A.2d at 284, (citing *Commonwealth v. Rodgers*, 472 Pa. 435, 372 A.2d 771 (1977) (permitting the prosecution to use preliminary hearing testimony of a witness at trial when that witness was unavailable)) and *Commonwealth v. Stasko*, 471 Pa. 373, 370 A.2d 350 (1977) (permitting prosecution to use a videotape deposition of a witness unavailable for trial). We emphasize that *Rodgers, supra,* and *Stasko, supra,* the cases on which the Supreme Court relied, presented exceptions to the state constitutional right to face to face confrontation; both cases involved original

testimony "given in the presence of the defendant with the defendant having the opportunity to face and cross-examine his accuser." *Ludwig*, 527 Pa. at 479, 594 A.2d at 284. In *Ludwig*, however, the exception did not apply; the Court determined that the "subjective fears of the witness," without more, were "insufficient to restrict this important constitutional right." *Id.* at 480, 594 A.2d at 285.

In the instant case, the trial court found that Justin was unavailable. The audio tape of Justin's testimony, therefore, was admitted at the second trial. Here, as in *Stasko* and *Rodgers*, and unlike *Ludwig*, original testimony was given in the presence of Bourgeon and Bourgeon was given the opportunity to face and cross-examine his accuser.

Additionally, in this case, it was not simply Justin's subjective fears on which the trial court based its finding of unavailability. Dr. Leute testified that there were both physical and psychological manifestations of Justin's trauma at the prospect of testifying again, including vomiting, diarrhea, threatening to run away, and threatening suicide.

■ Next, Bourgeon argues that the trial court abused its discretion by qualifying Dr. Leute as an expert to determine if the witness, Justin, was unavailable to testify at the second trial. We find no error or abuse of discretion.

■ The qualification of expert testimony lies within the sound discretion of the trial court; we will not reverse absent an abuse of that discretion. *Commonwealth v. Echevarria*, 394 Pa.Super. 261, 575 A.2d 620 (1990). The standard of qualification is a liberal one:

> If a witness "has any reasonable pretension to specialized knowledge on the subject under investigation he may testify and the weight to be given to his evidence is for the jury."

*Kuisis v. Baldwin–Lima Hamilton Corp.*, 457 Pa. 321, 338, 319 A.2d 914, 924 (1974) (citations omitted). *See also Commonwealth v. Bennett*, 471 Pa. 419, 370 A.2d 373 (1977). Additionally, "great deference is given to the trial court's

finding of fact with regard to qualifications[.]" Packel & Poulin, *Pennsylvania Evidence*, § 702.3 (1987).

Here, the trial court accepted the opinion of Dr. Leute, finding him qualified to testify with respect to Justin's physical and psychological manifestations of trauma induced as a result of sexual abuse and as a result of having testified at the first trial. Dr. Leute is a licensed psychologist. Dr. Leute testified that he was in private practice and also did consulting for the Children's Sexual Abuse Center in Media, Pennsylvania, which involves treating children who have been sexually abused. Dr. Leute holds a master of arts degree in clinical psychology and, at the time of trial, had several hundred hours of training in hypnotherapy and psychotherapy.

Dr. Leute also testified that he had attended various seminars and educational programs pertaining to child sexual abuse, with respect to both victims and perpetrators. Dr. Leute testified that approximately one-third of his practice was devoted to treating sexually abused children.

The trial court found that Dr. Leute was qualified to testify as an expert as to the physical and psychological trauma suffered by Justin as a result of sexual abuse and as a result of being made to testify, and, consequently, as to Justin's "unavailability." We find no error. Dr. Leute's education and experience with the dynamics of child sexual abuse clearly places him within the range of having "specialized knowledge on the subject" of child sexual abuse and its effects. *Kuisis*, 457 Pa. at 338, 319 A.2d at 924.

In his final claim, Bourgeon argues that the verdict is against the weight of the evidence and that the evidence is insufficient to support the verdict. These claims pertain to criminal information number 104B, corruption of minors, in which David was the victim. We find both claims meritless.

In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of

the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Jarman*, 529 Pa. 92, 94–95, 601 A.2d 1229, 1230 (1992); *Commonwealth v. Swann*, 431 Pa.Super. 125, 635 A.2d 1103 (1994). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Swerdlow*, 431 Pa.Super. 453, 458, 636 A.2d 1173, 1176 (1994) (citing *Commonwealth v. Hardcastle*, 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1986)). *See also Commonwealth v. Chmiel*, 536 Pa. 244, 639 A.2d 9 (1994). Furthermore, it matters not whether the appellant finds a witness's testimony lacking in credibility; such matters are solely within the province of the jury as trier of fact and, as such, will not be assailed on review by this court. *Swerdlow, supra.*

Where issues of credibility and weight of the evidence are concerned, it is not the function of an appellate court to substitute its judgment based on a cold record for that of the trial court. *Commonwealth v. Paquette*, 451 Pa. 250, 257, 301 A.2d 837, 841 (1973); *McElrath v. Commonwealth*, 405 Pa.Super. 431, 443, 592 A.2d 740, 745 (1991). A new trial is warranted on a challenge to the weight of the evidence only if the verdict is so contrary to the evidence as to shock one's sense of justice. *McElrath* at 441–43, 592 A.2d at 745. Given this stringent standard, along with the facts and testimony of the instant case, we do not find the evidence here so shocking to one's sense of justice so as to warrant a new trial. Furthermore, issues of credibility are left to the trier of fact; the jury is free to accept all, part, or none of the witness testimony. *Commonwealth v. Pirela*, 398 Pa.Super. 76, 83–84, 580 A.2d 848, 852 (1990), *appeal denied*, 527 Pa. 672, 594 A.2d 658 (1991); *Commonwealth v. Vitacolonna*, 297 Pa.Super. 284, 288–90, 443 A.2d 838, 841 (1982). The evidence presented at trial indicated that the two victims, Justin and David, became acquainted with Bourgeon in the summer of 1991. Justin and David, as well as other children in the neighborhood, played in Bourgeon's garage and were invited into Bourgeon's house. David testified that during that summer Bourgeon invited him

into the house. David stated that Bourgeon showed him a "pin toy," which made impressions. Bourgeon placed it on his face and showed David the impression. He then told David to go upstairs in the bathroom and place it on his penis. David hesitated but was lured upstairs to Bourgeon's bedroom to view a karate photograph. Bourgeon carried the pin toy upstairs. Bourgeon again told David to go into the bathroom and place the pin toy on his "wiener." David was undecided about whether to do it, but he went into the bathroom. He was about to close the door when Bourgeon walked in. Bourgeon tried to pull David's gym shorts down, stating "I just want to put it on." He pulled David's shorts down about two inches, but David pulled them up. David said "no," and left the house. Bourgeon gave him money, but David refused it because "it was dirty."

Applying the above standards to the evidence presented at trial, we find that Bourgeon's sufficiency and weight of the evidence claims are clearly meritless. *Jarman, supra; Paquette, supra. See Commonwealth v. Hernandez,* 420 Pa.Super. 1, 615 A.2d 1337 (1992) (testimony of victim, corroborated in part by his mother, was sufficient to sustain defendant's conviction for corruption of a minor); *Commonwealth v. Bricker,* 397 Pa.Super. 457, 580 A.2d 388, *appeal denied,* 527 Pa. 596, 589 A.2d 687 (1990) (verdict finding defendant guilty of corruption of a minor was supported by sufficient evidence of acts which would corrupt a minor, regardless of finding of not guilty of indecent assault or involuntary deviate sexual intercourse).

Judgment of sentence affirmed.

OLSZEWSKI, J., files a Concurring Opinion.

OLSZEWSKI, Judge, concurring:

I concur in the result reached by the majority in this case. I write separately only to further clarify the trial court's discussion of the unavailability of the child witness.

For purposes of using a witness's former testimony, the witness is unavailable if he or she is dead, out of the jurisdic-

tion, cannot be found, or is sick or insane. *Shields v. Larry Construction Co.*, 370 Pa. 582, 585–87, 88 A.2d 764, 766 (1952); *Mackintosh–Hemphill Div. v. Unemployment C.B. of R.*, 205 Pa.Super. 489, 493–95, 211 A.2d 23, 26 (1965). The trial court here found that the child witness was unavailable under the illness prong, based on the trauma that the child would suffer as a result of being forced to testify again. While the illness prong of the unavailability test is not well developed in the case law, it seems that a witness's subjective fear of testifying at trial does not constitute an illness. *See Commonwealth v. Ludwig*, 366 Pa.Super. 361, 400–02, 531 A.2d 459, 479 (1987), *appeal granted*, 518 Pa. 617, 541 A.2d 744 (1988), *reversed*, 527 Pa. 472, 594 A.2d 281 (1991) (Cirillo, J., dissenting). A trial is stressful by nature, and a person should not be excused for having a normal reaction to the judicial proceedings. *Id.*

We have found illness, and therefore unavailability, however, if the stress of trial aggravates a pre-existing medical condition. *See Commonwealth v. Stasko*, 471 Pa. 373, 370 A.2d 350 (1977). In *Stasko*, the trial court found a witness to be "ill," and therefore unavailable, based upon evidence that she previously had numerous abdominal operations for ulceric conditions and the emotional strain of appearing for trial would have greatly aggravated her existing medical condition. On appeal, our Supreme Court held that the witness was properly found unavailable and the testimony did not violate the defendant's confrontational rights. *Id.*

In the instant case, an expert testified that the child would suffer severe emotional distress if he were forced to testify at the second trial. The illness required for unavailability, however, was not found on the basis of a subjective fear of testifying at trial. The requisite illness was found in the fact that the child witness was traumatized by testifying at the first trial, and now had a pre-existing medical condition which would be aggravated by the stress of being forced to testify at the second trial.[1] This case falls squarely within the scope of

---

1. A child psychology expert testified that after the trauma of testifying in the first trial, the threat of testifying again caused the child to suffer vomiting, diarrhea, and thoughts of suicide. N.T. 5/26/93 at 26.

*Stasko,* and the majority opinion cannot be interpreted as creating any general category of unavailability based solely on subjective fears of testifying at trial.

In addition to the illness prong of unavailability, which applies to all witnesses, special considerations also exist in this case that militate against finding a confrontation right violation. This child witness has been the victim of a neighbor's sexual abuse. The child testified at the defendant's first trial, under oath and in the defendant's presence. At that first trial, the defendant had a full and fair opportunity for live cross-examination. Additionally, an expert testified about the real physical symptoms that this child experienced, such as vomiting and diarrhea, in anticipation of testifying again.

Unlike the child witness videotape cases in recent years that have been found to violate the Pennsylvania Constitution, this defendant did have the opportunity to confront his child accuser face-to-face, and this child witness suffered real physical symptoms and not just a subjective fear of testifying. *Cf. Commonwealth v. Louden,* 536 Pa. 180, 187–89, 638 A.2d 953, 957 (1994) (finding 42 Pa.C.S. §§ 5984 and 5985 unconstitutional because they raise subjective fears of child witness above the rights of a defendant to confront his accuser face to face); *Commonwealth v. Ludwig,* 527 Pa. 472, 480–82, 594 A.2d 281, 285 (1991) (finding child witness's subjective fears about testifying not sufficient to override defendant's right to a face-to-face confrontation with his accuser). In a case such as this, the state's interest in protecting the child outweighs the very limited infringement on the defendant's confrontational rights.

Based on the foregoing, I concur in the majority's conclusion that appellant's right to confrontation was not violated.